**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**CIVIL ACTION NO. 17-cv-10876-LTS**

KAREN CALABRESE-KELLEY,
    Plaintiff

v.

TOWN OF BRAINTREE, BRAINTREE
POLICE DEPARTMENT, OFFICER JOHN
P. McNAMARA, SERGEANT CHARLES F.
BATA, OFFICER DAVID J. CLARK and
BRAINTREE POLICE DISPATCHER, JANE
DOE,
    Defendants

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rules of Civil Procedure Rule 56, this Memorandum is submitted in

support of the Defendants, Town of Braintree, Braintree Police Department, John P. McNamara,

Charles F. Bata, David J. Clark, and Jane Doe (collectively the "Defendants"), Motion for Summary

Judgment seeking judgment as a matter of law on all claims made against them in the Plaintiff's

Complaint ("Complaint").  Plaintiff brings the following four claims against the Defendants based

on the allegedly unlawful arrest after a domestic dispute on the evening of February 21, 2014.

| | | |
|---|---|---|
| Count I | False Arrest | |
| | *Against Bata[1], Clark, and McNamara* | |
| Count II | False Imprisonment | |
| | *Against Bata, Clark, and McNamara* | |
| Count III | Violation of 42 U.S.C. § 1983 | |
| | *All defendants* | |

---

[1] As detailed in the Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment (hereinafter Defendants' SMF), Sergeant Bata was the officer who made the decision to place Ms. Calabrese-Kelley under arrest, Officer McNamara transported Ms. Calabrese-Kelley to the station in his cruiser, and Officer Clark was both a responding and recording officer.

Count IV        Violation of Massachusetts Declaration of Rights
                *All defendants*

The Defendants respectfully request that summary judgment enter in their favor on all claims.  However, if the Court so finds that judgment as a matter of law on all claims is improper, the Defendants respectfully request judgment on those claims and parties as the Court sees fit.

## I.      STATEMENT OF FACTS

Defendants rely on their *STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT* incorporated herein by reference.

## II.     STANDARD OF REVIEW

### A.      Standard of Review of Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure allows a party to move with or without supporting affidavits for summary judgment in the party's favor upon all or any part of the action. Fed.R.Civ.P. 56(a).  The Court should grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Id.*  A factual dispute is "genuine" if it can be resolved in favor of either party and such a dispute is "material" if it potentially affects the outcome of the case.  *Calero–Cerezo v. U.S. Dept. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004).

Although the moving party carries the burden of establishing that there is no genuine issue as to any material fact, the burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 331 (1986).

2

The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e), summary judgment exists "to pierce the boilerplate of the pleadings and assess the proof in order to determine the need for trial." *Euromodas, Inc. v. Zanella*, 368 F.3d 11, 17 (1st Cir. 2004) *citing Wynne v. Tufts Univ. Sch. of Med* ., 976 F.2d 791, 794 (1st Cir.1992).

Regarding a request of Motion for Summary Judgment, Rule 56(c) of the Federal Rules of Civil Procedure provides that:

> [t]he judgment sought shall be rendered forthwith if the pleadings, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In order for a court to grant summary judgment, it must determine: (1) whether there are any material facts at issue in the dispute; (2) whether those issues have been adequately presented to the court so as to be considered as genuine issues; and (3) whether the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Román Figueroa v. Torres Molina*, 754 F.Supp. 239, 240–41 (D.P.R. 19).

If a factual issue is not relevant to the resolution of a controlling legal issue raised by a motion for summary judgment, it is not considered material within the meaning of Rule 56(c) and summary judgment can be granted. *U.S. Fire Ins. Corp. v. Productions Padosa, Inc.*, 835 F.2d 950, 953 (1st Cir. 1987); *Boston Five Cents Sav. Bank v. Dept. of Housing*, 758 F.2d 1, 4 (1st Cir. 1985); *U.S. Sumitomo Shoji New York, Inc.*, 814 F.2d 798, 804 (1st Cir. 1987).

### B.    Pendent Jurisdiction of State Law Claims

Pendent jurisdiction, in the sense of judicial power, exists whenever there is a claim arising

3

under the Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority, U.S.Const., Art. III, s. 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).  The federal claim must have substance sufficient to confer subject matter jurisdiction on the court.  *Levering & Garrigues Co. v. Morrin*, 289 U.S. 103 (1933).  The state and federal claims must derive from a common nucleus of operative fact.  But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole. *United Mine Workers of Am.*, 383 U.S. at 725.

## III.   **ARGUMENT**

Because of the overlapping nature of the plaintiff's counts, the defendants may address the arguments by subject matter and party in addition to addressing them by count.

### A. **Sergeant Bata, Officer Clark, Officer McNamara and the Jane Doe Defendants are Entitled to Judgment on Plaintiff's Unlawful Seizure Claim under 42 U.S.C. § 1983 (Count III) on Grounds of Qualified Immunity**

Applicable to all claims for relief brought against the above officers in their individual capacity is the affirmative defense of qualified immunity. This defense is properly and procedurally addressed prior to addressing the viability of each count as it is a matter of law for the Court to decide. *Raiche v. Pietroski*, 623 F.3d 30, 35 (1st Cir. 2010) (applying qualified immunity analysis to § 1983 claim, Massachusetts Civil Rights Act claim, and common law claims). The defense of qualified immunity is properly discussed prior to addressing the viability of the claims on the merits, because the defense is a legal determination for the Court to decide. *Id.* at 35; *see also Pearson v. Callahan*, 555

U.S. 223, 231 (2009) (stressing importance of resolving immunity questions at earliest possible stage of litigation).

Qualified immunity protects police officers from civil liability while conducting discretionary activities as long as their alleged misconduct did not violate a clearly established federal statutory or constitutional right. *Wilber v. Curtis*, 872 F.3d 15, 21 (1st Cir. 2017). To analyze whether a right was clearly established, the court must determine "(a) whether the legal contours of the right in question were sufficiently clear that a reasonable officer would have understood that what he was doing violated the right, and (b) whether in the particular factual context of the case, a reasonable officer would have understood that his conduct violated the right." *Mlodzinski v. Lewis*, 648 F.3d 24, 33 (1st Cir. 2011). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). It is no longer required that the court determine whether a constitutional right was violated prior to making a determination of whether such a right was clearly established at the time of the violation. *Maldonado v. Fontanes*, 568 F.3d 263, 270 (1st Cir. 2009).

>   i.      *No Constitutional Right Has Been Violated*

In the context of warrantless arrests, the First Circuit provides that a police officer is not liable under § 1983 for a warrantless arrest if probable cause exists, even if the presence of probable cause was "merely questionable at the time of the arrest." *Floyd v. Farrell*, 765 F.2d 1, 5 (1st Cir. 1985). Only if "there clearly was no probable cause at the time the arrest was made" will qualified immunity not be available. *Id.* at 5; *see also Rivera v. Murphy*, 979 F.2d 259, 263 (1st Cir. 1992) (explaining court looks to whether probable cause "at least arguable"). In analyzing immunity, the Supreme Court noted the difficulty officers face in determining how the relevant legal doctrine applies to the unique situation and stressed "reasonable mistakes can be made." *Saucier v. Katz*, 533 U.S. 194, 205 (2001).

Simply put, even if the Court finds that probable cause was scant, qualified immunity still precludes liability.

The test for probable cause is objective. *Commonwealth v. Franco*, 419 Mass. 635, 639, 646 (1995). And so, probable cause exists where the facts and circumstances in the arresting officer's knowledge and of which he or she has reasonably trustworthy information…sufficient to warrant a person of reasonable caution in believing that an offense has been or is being committed. *Commonwealth v. Williams*, 422 Mass. 111, 119 n. 11 (1996); *see also Commonwealth v. Storey*, 378 Mass. 312, 321 (1979), cert denied, 446 U.S. 955 (1980) (describing testing mind as that of a "prudent person"). Ultimately, probable cause is a relatively low threshold, requiring only sufficiently trustworthy information to instill in a reasonable person the requisite belief of criminality. *White v. Marblehead*, 988 F. Supp. 345, 349 (D. Mass. 1997).

But Massachusetts imposes additional requirements on warrantless arrests. *Santiago v. Fenton*, 891 F.2d 373, 383 (1st Cir. 1989) (stating Massachusetts requirement of "reasonable grounds" for arrest); *see also Wagenmann v. Adams*, 829 F.2d 196 (1st Cir. 1987) (explaining requirement of "reasonable grounds" substantially overlaps with constitutional requirement of probable cause). Explicitly stated, "in the absence of statutory authority, officers may not arrest, for the commission of a misdemeanor involving a breach of the peace, unless the misdemeanor is committed in their view or presence and is continuing at the time of the arrest." *Richardson v. City of Boston*, 758 N.E.2d 629, 631 (Mass. App. Ct. 2001).

The enactment of G.L. c. 209A, § 6 provided the statutory authority for police to make warrantless arrests for certain misdemeanors in the context of domestic abuse. *Commonwealth v. Jacobsen*, 419 N.E.2d 213 (Mass. 1995). The abuse prevention statute not only provides such statutory

6

authority to arrest, it *mandates* arrest.[2]

The court in *Richardson v. City of Boston*, 53 Mass. App. Ct. 201 (2001) examined such an arrest. In *Richardson*, Boston police officers arrested the plaintiff without a warrant after his spouse complained that the plaintiff had just struck her in the face. *Richardson*, 758 N.E. at 630. The Plaintiff subsequently filed a nine count complaint against the City of Boston, claiming he was arrested without probable cause and thus illegally arrested. *Id.* On appeal, the court held that the victim's statements to the police that the Plaintiff struck her in the face, coupled with her statement indicating the Plaintiff had punched her two days earlier, "readily meet the requirements of at least one of the provisions of c. 209A, § 6 (7)." *Id.*

Applying probable cause to the statutory framework, the *Richardson* court held if the police have probable cause to believe the Plaintiff had committed an assault and battery or a misdemeanor involving abuse, they properly could arrest him without a warrant. *Id.* The central question is, therefore, whether in the circumstances, a prudent person in the position of sergeant reasonably could have believed the victim's report and assertions. *Id.* The court held that the officers did meet

---

[2] It provides, in relevant part, as follows:

When any law officer has reason to believe that a family or household member has been abused or is in danger of being abused, such officer shall use all reasonable means to prevent further abuse. The officer shall take, but not be limited to the following action:

…

(7) arrest any person a law officer witnesses or has probable cause to believe has violated a temporary or permanent vacate, restraining, or no-contact order or judgment…When there are no vacate, restraining, or no-contact orders or judgments in effect, arrest shall be the preferred response whenever an officer witnesses or has probable cause to believe that a person:

    (a)  has committed a felony;
    (b)  has committed a misdemeanor involving abuse as defined in section one of this chapter;
    (c)  has committed an assault and battery in violation of G.L. c. 265, § 13A.

*Richardson v. City of Boston*, 53 Mass. App. Ct. 201 (2001).

the low threshold for probable cause, as the report of the abusive conduct came to the sergeant directly from the victim, imparting "an ostensible patina of credibility." *Id.* Further, the victim's "bruised condition tended to corroborate her story." *Id.* As such, the *Richardson* court found that the existence of probable cause to arrest properly called for summary judgment.

The evidence in this case shows that Ms. Calabrese-Kelley challenged the probable cause in her criminal prosecution by her motion for required finding at the close of all evidence and her motion was denied. The implications of this finding are that the judge in Ms. Calabrese-Kelley's criminal matter found that probable cause existed for the crime charged. To provide more detailed analysis, however, the defendant officers had probable cause to believe that Ms. Calabrese-Kelley hit Mr. Kelley with a hockey stick and had been abusive to him in the past. Similar to the victim in *Richardson*, who told officers the plaintiff had just struck her in the face, Mr. Kelly told Sergeant Bata that Ms. Calabrese-Kelly had "slashed him" with a hockey stick.[3] Although Ms. Calabrese-Kelley testified the hockey stick "came out as she was falling to the ground," she told both Officer McNamara that she "had taken the hockey stick and swung it at her husband" and told Sergeant Bata "that she had hit her husband with the stick." The gestures she described further support this conclusion. Despite the lack of clarity in Ms. Calabrese-Kelley's recitation of what had occurred, it is beyond dispute that Mr. Kelley told the officers that she had slashed him with a hockey stick. This establishes probable cause. Ms. Calabrese-Kelley's argument that the officers arrest is tainted because Mr. Kelley is a police officer is an argument that is inapplicable to the analysis of the elements of her claims. The fact remains that probable cause for her arrest existed and is precisely why her criminal prosecution proceeded to a jury determination.

Further, Mr. Kelly told the Defendant officers, just as the victim did in *Richardson*, that the

---

[3] Officer Clark testified to this fact as well. (Clark Depo. at 28).

reason he parked a distance away from Ms. Calabrese-Kelley is that "Karen can be hostile towards him." It appears from the facts that Mr. Kelley was correct in his prediction, as he sustained multiple injuries as a result of this encounter to his lower body.[4]

As to Mr. Kelly's credibility, the *Richardson* court was clear that only sufficiently trustworthy information is required to instill a reasonable person the requisite belief of criminality. Sergeant Bata testified that he came to the conclusion that Ms. Calabrese-Kelley had been the aggressor and should be arrested in relevant part as follows:

> I felt she was the aggressor. He and her both confirmed that she had struck him with the hockey stick which would be probable cause that it was with an ABDW. He was by his car, she approached him. I just felt she was the aggressor in the situation.

(Bata Depo. at 34). Officer McNamara also outlined his reasoning in relevant part as follows:

> The fact that the cars had a significant separation between them, that she had brought the hockey bag over to his car, she had tried to force the hockey bag into the car, she would not take no for an answer when he didn't want her to put the bag in there, and the fact that at one point she did take the hockey stick and did swing it at him

(McNamara Depo. at 25). Thus, the decision to arrest Ms. Calabrese-Kelley was based not only on the account of the purported victim, which is sufficient under the *Richardson* standard, but on what Ms. Calabrese-Kelley told officers, namely that she hit Mr. Kelley with the hockey stick intentionally or not. As such, the officers reached a unanimous consensus that Ms. Calabrese-Kelley was the aggressor, thus mandating her arrest under M.G.L. c. 209A.

No reasonable jury could conclude that the Defendant officers, who were told by both the victim and the Plaintiff that she had just hit Mr. Kelly with a hockey stick, lacked probable cause to arrest the Plaintiff. Even if there is a factual dispute as to what exactly occurred prior to the officers arriving on scene and precisely what Ms. Calabrese-Kelley said to the officers, there is no doubt that the officers had "reasonably trustworthy" information that Ms. Calabrese-Kelley struck Mr. Kelley

---

[4] See Exhibit 1.

9

with a hockey stick as both parties agree that this happened. This testimony is supported by the

lower body injuries Mr. Kelley suffered as a result of this encounter.

Accordingly, the Court is directed to M.G.L. c. 209A, § 6 which states:

No law officer shall be held liable in any civil action regarding personal injury or injury to property brought by any party to a domestic violence incident for an arrest based on probable cause when such officer acted reasonably and in good faith and incompliance with this chapter and the statewide policy as established by the Secretary of Public Safety.

M.G.L. c. 209A, § 6.

Civil claims such as those brought by Ms. Calabrese-Kelley in this action were anticipated by the

Massachusetts Legislature and specifically precluded by the plain meaning of the statute. No

constitutional right has been violated and, as such, the Defendants respectfully Judgment enter in

their favor.

### ii.    The Constitutional Right Was Not Clearly Established

Even if a constitutional right is established under the first prong of the qualified immunity

analysis we must still consider (a) the clarity of the law in general at the time of the alleged violation;

and (b) whether a reasonable person in the Defendants' shoes "would have understood that his

conduct violated the Plaintiff's constitutional rights." *Raiche*, 623 F.3d at 35-36 *quoting Maldonado*, 568

F.3d at 268. If the law is not sufficiently clear at the time of the alleged violation or a reasonable

person in the Defendant's shoes would not have understood that his conduct violated the Plaintiff's

constitutional rights, qualified immunity is proper. *Id.* As detailed above, the state of the law for

arrests in domestic violence incidents in Massachusetts specifically mandated an arrest be made. A

reasonable officer in the defendants' shoes would not have understood that he was violating Ms.

Calabrese-Kelley's rights (or Mr. Kelley's rights if the decision had been made to arrest him) because

the law both authorized and mandated such an arrest. *Richardson* supports this prong of the qualified

10

immunity analysis.

Here, given the undisputed facts, Sergeant Bata made a determination that Ms. Calabrese-Kelley was the aggressor in the situation and hit Mr. Kelley with a hockey stick. A reasonable officer in the Defendants shoes would not have understood that such an arrest of Ms. Calabrese-Kelley was a violation of her clearly established constitutional rights.

**B.    The Town Of Braintree Did Not Establish An Unconstitutional Custom, Practice Or Policy Relative to Domestic Violence Arrests**

The doctrine that a municipality cannot incur liability under § 1983 based on *respondeat superior* is well established. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036 (1978) ("municipality cannot be held liable under § 1983 on a *respondeat superior* theory"). Further, it is well-settled in the First Circuit that, to establish municipal liability under § 1983, there must be a finding of two preliminary elements: first, that Plaintiff's harm was caused by a constitutional violation, and second, that the Town is responsible for that violation, an element which has three components. First, the alleged municipal action at issue must constitute a 'policy or custom' attributable to the Town; second, the municipal policy or custom must actually have caused plaintiff's injury; and third, "the municipality possessed the requisite level of fault, which is generally labeled in these sorts of cases as 'deliberate indifference.'" *Young v. City of Providence*, 404 F.3d 4, 25-26 (1st Cir. 2005). The second prong of the test requires proof of three elements: (a) "the alleged municipal action at issue must constitute a 'policy or custom' attributable to the [Town];" (b) "the municipal policy or custom actually have caused plaintiff's injury;" and (c) "the municipality possessed the requisite level of fault, which is generally labeled in these sorts of cases as 'deliberate indifference.'" *Young v. City of Providence*, 404 F.3d 4, 26 (1st Cir. 2005).

11

### 1.    The Defendant Officers Were Adequately Trained

The Supreme Court stated in *City of Canton v. Harris*, 489 U.S. 378, 103 L. Ed. 2d 412, 109 S. Ct. 1197 (1989), that an allegation of a local government's failure to train police officers who then violate a plaintiff's constitutional rights can be actionable where "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact" and where "the identified deficiency in a city's training program [is] closely related to the ultimate injury." *Id*. at 388, 391.  A training program must be quite deficient in order for the deliberate indifference standard to be met: the fact that training is imperfect or not in the precise form a plaintiff would prefer is insufficient to make such a showing.  *Young v. City of Providence*, 404 F.3d 4 (1st Cir. R.I. 2005) citing *Brown and City of Canton v. Harris*, 489 U.S. 378, 391 (1989);  *Grazier v. City of Philadelphia*, 328 F.3d 120, 125 (3d Cir. 2003);  *Palmquist v. Selvik*, 111 F.3d 1332, 1345 (7th Cir. 1997) (where town gave police officers some training on handling suspects exhibiting abnormal behavior, argument that even more training should have been given failed).

The Plaintiff has not discovered any evidence which would suggest that the Defendant Officers in this case – Sergeant Bata, Officer McNamara, Officer Clark, or Jane Doe – were not properly trained.  The evidence in the record is that none of the officers have received any discipline in their careers as a police officer for any matter remotely related to exercising their powers of arrest which would suggest the need for additional training.[5]  Each Defendant officer testified to the training he received in the academy and through annual in-service trainings.  Thus, Plaintiff can aver no evidence to suggest that the Defendants' training was inadequate.

---

[5] Officer McNamara was the only defendant who has received any discipline in his career. He testified that he received a five day suspension for a matter having nothing to do with a police officer's powers of arrest at Pg. 14-15 of his deposition.

## 2. There Is Otherwise No "Policy Or Custom" Attributable To The Town In This Case That Would Have Caused The Alleged Violation

A "policy or custom" attributable to the Town means that it is "so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." *Estate of Bennett v. Wainwright*, 548 F.3d 155, 177 (1st Cir. 2008) (quoting *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989)).

The Supreme Court has firmly rejected *respondeat superior* as a basis for section 1983 liability of supervisory officials, *Monell v. Department of Social Services*, 436 U.S. 658, 694 n. 58, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978) (citing *Rizzo v. Goode*, 423 U.S. 362, 370-71, 46 L. Ed. 2d 561, 96 S. Ct. 598 (1976)), or municipalities, *Monell*, 436 U.S. at 691. The Court has said that the language in section 1983, "subjects, or causes to be subjected," should not be construed to include vicarious liability, which is based on considerations of public policy rather than fault or causation. Nonetheless, lower courts have suggested that the statutory language is broad enough to extend liability to those no personally involved in the deprivation of constitutional rights. *McClelland v. Facteau*, 610 F.2d 693, 696 [820] (10th Cir. 1979). Such situations are limited, however, to ones showing an "affirmative link" between the conduct of the supervisor and that of the employee. *Rizzo*, 423 U.S. at 371.

The Plaintiff does not even specify precisely why the Town of Braintree is a named defendant to this action. Counts I, II, and IV are not claims that may be brought against municipalities.[6] Therefore, to the extent Count III of the Complaint alleges a claim under 42

---

[6] Counts I and II are barred as sovereign immunity of the municipality has not been waived. See G.L. c. 258, § 2. As to Count IV, a municipality is not a "person" covered by the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, §§ 11H, 11I. *Howcroft v. City of Peabody*, 51 Mass. App. Ct. 573, 591-592 (2001)

U.S.C. § 1983, the Defendants analyze the insufficiency of such a claim against the Town of Braintree.  However, Plaintiff has not identified a single custom or practice through discovery in this case which would show to the Court the potential existence of a "Policy or Custom" claim under *Monell* in order to justify even this unspecified claim against the Town of Braintree.  To the extent Plaintiff claims the Town should have disciplined or more strenuously supervised the Defendant Officers *after* or *as a result of* this incident, Plaintiff's claim is a *respondeat superior* claim which is insufficient as a matter of law.

Plaintiff has failed to prove the existence of an unconstitutional policy.

### 3.    *Deliberate Indifference*

In addition to proving the existence of an unconstitutional policy, Plaintiff must also establish that such policy amounts to a "deliberate indifference" to their constitutional rights. *DiRico v. City of Quincy*, 404 F.3d 464, 468 (1st Cir. 2005) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197 (1989)). Only if there were such deliberate indifference could the Town be held liable under § 1983. To succeed under this "exceptionally stringent" standard, Plaintiff must show that the Town has disregarded a pattern of police misconduct, particularly in patterns of arrest, or perhaps more specifically, patterns of arrest in domestic violence situations. Plaintiff has done neither.  Plaintiff has failed to discover any facts which would show deliberate indifference and thus, plaintiff has failed to sustain this heavy burden.

### C.    Plaintiff's Count I For False Arrest and Count II For False Imprisonment Both Fail As Matters Of Law

According to the Supreme Court, "false arrest and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato*, 549 U.S. 384, 388-389 (2007) (referring to the two torts together as false imprisonment). As such, every false arrest includes false imprisonment, although a

14

person may be liable for false imprisonment without proof of an arrest. Police officers are subject to liability for false imprisonment "unless the police officer had a legal justification" for the restraint. *Rose v. Town of Concord*, 971 F. Supp. 47, 51 (D. Mass. 1997) *citing Wax v. McGrath*, 255 Mass. 340, 342, 151 N.E. 317 (1926). Here, the Plaintiff was arrested, and so the sole issue for both claims is whether or not the arrest was lawful under the circumstances. Whether or not the arrest was lawful hinges on the determination as to whether there was probable cause to arrest Ms. Calabrese-Kelley. See *Finucane v. Town of Belchertown*, 808 F. Supp. 906, 909 (D. Mass. 1992) (stating lack of probable cause gives rise to liability under 42 U.S.C. § 1983 and M.G.L. ch. 12, §§11I and 11H).

As discussed in greater detail above, Sergeant Bata's decision to place the Plaintiff under arrest was lawful and justified under both the probable cause framework and the statutory procedure under G.L. c. 209A, § 6. Plaintiff's claim of false arrest therefore fails as a matter of law, and consequently her claim of false imprisonment fails as well.

### B.  Count IV Violation of Massachusetts Declaration of Rights[7]

1.      *Defendants are entitled to qualified immunity on Plaintiff's Count IV*

The same standard for qualified immunity applies to MCRA claims and § 1983 claims. *Raiche v. Pietroski*, 623 F.3d 30, 40 (1st Cir. 2010) *citing Duarte v. Healy*, 405 Mass. 43, 537 N.E.2d 1230, 1232 (Mass. 1989); *Howcroft v. City of Peabody*, 51 Mass. App. Ct. 573 (Mass. App. Ct. 2001) ("The qualified

---

[7] Though not specifically pled as a claim under G.L. c. 12, §§ 11H & 11I, because Count IV grieves the arrest of the Plaintiff, Defendants respond to Count IV as if it were properly pled under this statute. To the extent the Plaintiff attempts to claim a separate right to relief under the Massachusetts Declaration of Rights, no such right of action exists. *Pimentel v. City of Methuen*, Civil Action No. 1717-11921-FDS, 2018 U.S. Dist. LEXIS 106544, at *29 (D. Mass. June 26, 2018) (finding the SJC has never held that there is a right of action to enforce the Massachusetts Declaration of Rights).

immunity principles developed under § 1983 apply equally to claims under the MCRA.").  For the same reasons discussed in defense of Plaintiff's Count III, above, Defendants Bata, McNamara, Clark and Doe are entitled to qualified immunity on Plaintiff's Count IV.

> 2.    *Plaintiff alleges a direct violation of her constitutional rights which is not actionable under the MCRA*

The Defendants further contend that there can be no liability under the MCRA because the Plaintiff's claim is based upon a direct violation theory.  In *Longval v. Commissioner of Correction*, 404 Mass. 325, 333 (1989), where the court affirmed the requirement under the MCRA that proof of "threats, intimidation, or coercion" be in addition to the interference with the exercise or enjoyment of secured rights, saying "[a] direct violation of a person's rights does not by itself involve threats, intimidation, or coercion and thus does not implicate the Act."  *Planned Parenthood League of Mass., Inc. v. Blake*, 417 Mass. at 473.

Here, there is no allegation or evidence of "threats, intimidation or coercion" by the Defendant Officers or Jane Doe as against the Plaintiff.  Instead, her claim is that Sergeant Bata was not justified in making his arrest decision.  This is not a violation of M.G.L. c. 12, §§ 11H or 11I.

## IV.    **CONCLUSION**

For all those reasons stated more fully above the Defendants, Town of Braintree, Charles F. Bata, John P. McNamara, Officer David J. Clark, and Jane Doe most respectfully request that this Honorable Court enter summary judgment on their behalf on all counts of the Plaintiff's Complaint.

RESPECTFULLY SUBMITTED,

For the Defendants,
By their attorney,

/s/*Joseph A. Padolsky*
Joseph A. Padolsky, BBO #679725
**Louison, Costello, Condon & Pfaff, LLP**

16

101 Summer Street
Boston, MA 02110
(617) 439-0325
jpadolsky@lccplaw.com

Date: <u>September 17, 2018</u>

## CERTIFICATE OF SERVICE

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Date: <u>September 17, 2018</u>          <u>*/s/ Joseph A. Padolsky*</u>
                         Joseph A. Padolsky

17