UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-cv-10876-LTS

KAREN CALABRESE-KELLEY,
    Plaintiff

v.

TOWN OF BRAINTREE, BRAINTREE
POLICE DEPARTMENT, OFFICER JOHN
P. McNAMARA, SERGEANT CHARLES F.
BATA, OFFICER DAVID J. CLARK and
BRAINTREE POLICE DISPATCHER,
JANE DOE,
    Defendants

**PLAINTIFF'S OPPOSITION AND MEMORANDUM OF LAW
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Now comes the above captioned Plaintiff, Karen Calabrese-Kelley, and hereby opposes the Defendants Motion for Summary Judgment seeking judgment as a matter of law on all claims made against them in the Plaintiff's Complaint. For reasons being therefore, the Plaintiff states there are a multitude of material facts which are in dispute, namely, whether probable cause existed to a degree that a reasonably prudent person would have concluded the Plaintiff had committed the named offense and thus was not deprived of her constitutionally protected right to be free from unlawful seizure. Further issues of material fact abound in whether such probable cause existed and therefore a finder of fact must resolve those issues of material fact in favor of one party or the other. For those reasons, and those more particularly delineated herein, the Plaintiff respectfully requests this honorable court <u>deny</u> the Defendants Motion for Summary Judgment and place the within matter on the trial list.

**I. FACTS**

1

Plaintiff hereby relies upon those admitted and disputed facts contained in the Statement of Material Facts and on the record as produced in Exhibits A – J, and hereby incorporates those certain documents by reference as if set forth fully herein. In addition thereto, Plaintiff hereby supplements the Statement of Material Facts as follows:

72. During the investigation of the incident Officer David Clark observed Mr. Kelley to be calm. (Exhibit H at 28:3).

73. During the investigation of the incident none of the Braintree Police Officers inquired upon the minor witnesses as to what occurred between Mr. Kelley and Ms. Calabrese Kelley. (Exhibit G at 21:15 – 22:12, and Exhibit H at 31:23 – 32:15)

74. During the investigation of the incident, Ms. Calabrese-Kelley told the Braintree Police Officers "William pushed her first." (Exhibit J, and Exhibit C at 33:15-33:24; 42:3 – 42:22, and Exhibit G at 19:10 – 20:9).

75. During the investigation Sergeant Bata determined Ms. Calabrese-Kelley to be the aggressor in the incident because she was bringing the hockey bag to Mr. Kelley's car when Mr. Kelley did not have the child who had hockey. (Exhibit C at 34:12-36:16).

76. During the investigation Sergeant Bata based probable cause on the belief that Ms. Calabrese-Kelley had swung the stick at Mr. Kelley. (*Id.*).

77. During the investigation none of the Braintree Police Officers inquired if Mr. Kelley had a weapon on his person or in his control. (Exhibit H at 29:9 – 30:2, Exhibit C at 26:15-26:22).

78. All Braintree Police Officers testified in a domestic violence situation involving

law enforcement personnel, a firearm or weapon in the control of the law enforcement personnel involved in the domestic violence situation would be seized. While Officer Clark was not sure if there was a different policy for the domestic violence situation involving law enforcement personnel. (Exhibit C at 18:17 – 19:16, and Exhibit G at 13:4 – 13:13, and Exhibit H at 13:8 – 14:17).

79. All Braintree Police Officers testified the only training they had related to domestic violence situations stemmed from being familiar with the policies and procedures as promulgated by the Town of Braintree. Despite this familiarity the Braintree Police Officers failed to observe the requirements of domestic violence situations involving law enforcement. (Exhibit C at 18:17 – 19:16, and Exhibit G at 8:6 – 8:13 and 10:6 – 10:14, and Exhibit H at 13:8 – 14:17).

## II. LEGAL STANDARD

A. SUMMARY JUDGMENT

Fed. R. Civ. P 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).

"The trial court is not to pass upon the credibility of the witnesses or the weight of the evidence of make its own decisions of facts," and "should not grant a party's motion for summary judgment merely because the facts he offers appear more plausible than those tendered in opposition" or because it appears that the non-moving party is not likely to prevail at trial. *Attorney General v. Bailey*, 386 Mass. 367, 370 (Mass. 1982).

However, it is well settled law in the District of Massachusetts and the majority of

Federal Courts that "the party opposing the motion for summary judgment bears the burden of responding *only after* the moving party has met its burden of coming forward with proof of the absence of any genuine issues of material fact." *Celotex Corp.*, 477 U.S. at 322 (1986), CITING *Catrett v. Johns-Manville Sales Corp.*, 244 U.S. App. D.C. 160, 163, 756 F.2d 181, 184 (1985).

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp.*, 477 U.S. at 323 (internal quotations omitted).

Furthermore, under Fed. R. Civ. P. 56(e), a non-moving party "need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *Id*. at 324.

> … summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), CITING *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) ("… availability of summary judgment turn[s] on whether a proper jury question has been presented.").

B. UNLAWFUL ARREST: IV AMENDMENT

Under the Constitutional protections provided by the IV Amendment, "[a] warrantless arrest by a law enforcement officer is [only] reasonable … where there is probable cause to believe that a criminal offense has been or is being committed." SEE *Goddard v. Kelley*, 629 F.Supp. 2d 115, 124 (D. Mass. 2009), QUOTING *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). In the context of a plaintiff-arrestee's civil action for unlawful arrest under the IV Amendment,

"the only relevant inquiry is whether there was probable cause that any arrestable offense was committed." *Goddard*, 629 F.Supp. 2d at 126 (D. Mass. 2009).

C. Probable Cause to Arrest

The Fourth Amendment right to be free from unreasonable seizure "demands that an arrest be supported by probable cause." *Santiago v. Fenton*, 891 F.2d 373, 382 (1st Cir. 1989). Where no probable cause exists, a plaintiff-arrestee may seek redress under 42 U.S.C. § 1983. *Id*., citing *Batchelder v. Allied Stores Corp.*, 393 Mass. 819, 822-23 (1985).

> If the arresting officer, in his own mind, acted upon a groundless basis, the arrest was invalid. The fact that he might have had another good reason but didn't intend to use the other good reason is no excuse for arresting for the wrong reason, if the wrong reason was the motivation.

*Santiago*, 891 F.2d at 385 (1st Cir. 1989), quoting *Ware v. Garvey*, 139 F.Supp. 71, 85 (D. Mass. 1956).

D. Qualified Immunity Doctrine

Proper analysis of a defendant police officer's claim of qualified immunity for a warrantless arrest is three-fold: first, whether the plaintiff's claims – taken as true – constitute a constitutional violation; second, whether the constitutional right at issue was clearly established at the time of the putative violation; and third, whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to violate that constitutional right. See *Goddard v. Kelley*, 629 F.Supp. 2d 115, 127 (D. Mass. 1999), citing *Burke v. Town of Walpole*, 405 F.3d 66, 77 (1st Cir. 2005).

II. Discussion

In assessing whether a Plaintiff's claim for false arrest and false imprisonment and violation of 42 U.S.C. 1983 should have been adjudicated by a fact finder the First Circuit Court

5

of Appeals has undertaken a two-step analysis. *Santiago v. Fenton*, 891 F.2d 373, 383 (1st Cir. 1989). Firstly, analyzing whether a jury could reasonably find an arrest made in violation of the Fourth Amendment and Massachusetts Common Law and, secondly, whether any immunities applied. *Id.* The analysis in this matter should thus proceed in two stages, firstly, by determining whether the Braintree Police Officers had probable cause to arrest Ms. Calabrese-Kelley for the charge of Assault and Battery with a dangerous weapon, and secondly, whether the Braintree Police Officers acted reasonably in the circumstances as they knew or should have known they were violating Ms. Calabrese-Kelley's right to be free from unlawful seizure by so arresting her.

1. THIS HONORABLE COURT SHOULD NOT ENTER SUMMARY JUDGMENT BECAUSE THERE ARE NUMEROUS ISSUES OF MATERIAL FACT RELATED TO WHETHER PROBABLE CAUSE EXISTED TO ARREST THE PLAINTIFF WITHOUT A WARRANT.

The within matter should not be adjudged summarily because there are numerous issues of material fact related to the articulable probable cause which allegedly provided the basis for the arrest of the Plaintiff, Ms. Karen Calabrese-Kelley. Probable cause and the lack thereof form the basis for the Plaintiff's claims for false imprisonment and false arrest, and violation of her Fourth Amendment. Those issues include, but are not limited to, the following: (a) whether Mr. William Kelley did or did not tell Sergeant Charles Bata he did not have his daughter who had hockey and thus did not require the hockey equipment that weekend; (b) whether there was or was not an argument and dispute over who, (Mr. William Kelley or Ms. Karen Calabrese-Kelley) would take the hockey equipment; (c) whether Ms. Karen Calabrese-Kelley did or did not tell Officer McNamara and Sergeant Charles Bata she swung a hockey stick at Mr. William Kelley; and (d) whether Mr. Kelley did or did not tell the Braintree Police Officers Ms. Karen Calabrese-Kelley was running late that evening.

The dispute between the above referenced material facts renders the within matter inappropriate for adjudication at the summary judgment stage. In fact "a toehold is enough to survive a motion for summary judgment." *Marr Equipment Corp. v. I.T.O. Corp.*, 14 Mass. App. Ct. 231, 235 (Mass. App. Ct. 1982). Therefore the within matter should be sent to a finder of fact to determine the facts surrounding the within claims. The United States Court of Appeals, First Circuit, has held just that, a jury question existed in *Santiago v. Fenton*, because the Plaintiff and witnesses posed a version of events that differed from the arresting officers and therefore rightfully should have gone to the jury for adjudication. *Santiago v. Fenton*, 891 F.2d 373, 384 (1st Cir. 1989).

In the *Santiago* matter, the Plaintiff had been arrested for allegedly abusive conduct upon an officer. *Id.* However, the Plaintiff presented a version of facts where at no time did the Plaintiff hit, strike, or abuse the arresting officer. *Id.* The First Circuit held that the jury could have believed the Plaintiff's version of events and thus not allowing the finder of fact to do so was reversible error. *Id.* Here, virtually the same scenario exists, the Braintree Police Officers highlight two major facts in supporting probable cause to arrest Ms. Calabrese-Kelley: (1) she was the aggressor as she attempted to force the hockey bag upon Mr. Kelley; and (2) that Ms. Calabrese-Kelley stated she had in fact swung a hockey stick at Mr. Kelley. Both of those facts are disputed, and if taking the scenario as presented from the Plaintiff's vantage point, i.e. that Ms. Calabrese-Kelley was peacefully attempting to put the hockey equipment in Mr. Kelley's car because his children required it and that Ms. Calabrese-Kelley did not swing nor strike Mr. Kelley with a hockey stick then the fact finder may so find there did not exist probable cause to arrest the Plaintiff. In fact, this is precisely the reason for bringing the within matter, the Braintree Police Officers, having been informed of Mr. Kelley's status of an off-duty Boston

7

Police Officer went along with or made up facts to highlight Ms. Calabrese-Kelley as the aggressor with the hockey equipment and that she swung the stick at Mr. Kelley. Clearly, there is a factual dispute as to two material issues, who was the aggressor, and did Ms. Calabrese-Kelley actually hit Mr. Kelley or even tell the Braintree Police Officers that she did hit Mr. Kelley.

Further factual disputes arise when inquiring upon who was late to the pickup of children and the relevance to the arrest therefrom. The Braintree Police Officers claim Mr. Kelley informed them that Ms. Calabrese-Kelley was running late and that because of this fact it lends credence to the instability of Ms. Calabrese-Kelley and the indication she was the aggressor in the matter. However, there is a dispute as to who was running late and whether or not this was communicated to the Braintree Police Officers. Mr. Kelley testified he did not tell the Police Officers he was running late, however, same ended up in the officer's report. The dispute further underscores the differing stories and versions of the events that transpired, which necessitates a finder of fact adjudicate whether factually probable cause existed.

If a jury believes the Braintree Police Officers, then Ms. Calabrese-Kelley was running late, had hockey equipment with her for a child that was nowhere in sight, tried to force this foreign hockey equipment onto Mr. Kelley, and then when he wouldn't take it, became so frustrated and irate that she swung a hockey stick at him and struck him. However, if a jury believes the Plaintiff, then Mr. Kelley was hungover and late, that he knew he had his daughter who needed her hockey equipment, that Ms. Calabrese-Kelley was not going to leave her hysterical child in a parking lot while Mr. Kelley claimed he was not going to take the hockey equipment, began bringing the equipment to Mr. Kelley and was forcibly pushed by Mr. Kelley, called 911 first as the victim, and then when the Police arrived was treated as an aggressor, and

was not believed when she said she was pushed and never claimed to have hit Mr. Kelley with a hockey stick. Therefore, there is a multitude of factual issues that need to be resolved prior to the summary judgment stage and therefore any adjudication should be reserved for a finder of fact.

   2. SUMMARY JUDGMENT SHOULD NOT ENTER IN FAVOR OF THE BRAINTREE POLICE OFFICERS ON THE BASIS OF QUALIFIED IMMUNITY BECAUSE (1) THERE ARE MATERIAL ISSUES OF FACT REGARDING WHAT WAS KNOWN BY THE OFFICERS AND (2) THEY DID NOT ACT REASONABLY UNDER THE CIRCUMSTANCES AND KNEW OR SHOULD HAVE KNOWN THEY DID NOT EVEN HAVE ARGUABLE PROBABLE CAUSE TO MAKE THE ARREST.

As is long settled in federal civil rights suits, agents of the government are entitled to qualified immunity for their discretionary acts. *Santiago*, at 386 (citing *Anderson v. Creighton*, 483 U.S. 635 (1986)). As enunciated in *Santiago*, "the question of [...] immunity for false arrest turns on whether, without regard to his state of mind, there was probable cause or arguably probable cause to make the arrest." *Id.* (citing *Hall v. Ochs*, 817 F.2d 920, 925 (1st Cir. 1987); and *Floyd v. Farrell*, 765 F.2d 1, 5 (1st Cir. 1985). Furthermore, the Supreme Court has held the court should ask whether the governmental agents acted *reasonably*. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (emphasis added).

   A. <u>Factual disputes as to what was known by the Braintree Police Officers need to be adjudicated by a fact finder prior to any assessment of qualified immunity.</u>

Although qualified immunity is generally a question of law for the court. *Id.* The First Circuit has held where there is a disputed material fact which forms the basis for the qualified immunity the factual dispute must be resolved by the fact finder and summary judgment is inappropriate. *Kelley v. LaForce*, 288 F.3d 1, 7 (1st Cir. 2002) (quoting *Swain v. Spinney*, 117 F.3d 1, 10 (1st Cir. 1997)). In *Kelley*, such a case existed that precluded summary judgment on

9

the qualified immunity question because there was a material dispute as to what was actually known by the officers at the time of their actions which resulted in the violation of constitutional rights. *Id.* at 7-8. The First Circuit held that what the officers knew regarding the ownership of certain property at the time of confiscating the aforesaid property would determine whether a reasonably prudent person faced with the same dilemma could reasonably conclude they were not violating the Plaintiff's Constitutional rights by taking the aforesaid property *Id.* The Court held this factual dispute as to what the governmental agents knew at the time rendered the summary adjudication inapplicable and required a finder of fact to resolve that dispute. *Id.*

In the instant matter the factual disputes as to what the officers knew and were presented with need to be adjudicated before any determination of qualified immunity can be resolved. As in *Kelley*, where the First Circuit held the knowledge the officers' possessed at the time of deprivation of rights was material, the knowledge of the Braintree Police Officers here is material. As argued hereinabove the Plaintiff's version of the facts do not give rise to undisputed facts as to what the Braintree Police Officers knew at the scene while investigating. In *Kelley*, if the officers had known of the Plaintiff's ownership rights then no reasonably prudent person could have concluded the Plaintiff's rights would not be violated by a taking of that property. Here, if the officers did not know of the fact regarding who was taking the hockey equipment as the Plaintiff and Mr. Kelley have testified to then Ms. Calabrese-Kelley was not the aggressor and no reasonably prudent officer presented with that information would have determined she was the aggressor. Furthermore, if the Braintree Police Officers were not told that Ms. Calabrese-Kelley swung the hockey stick as the Plaintiff has testified then, again, no reasonably prudent police officer would have determined Ms. Calabrese-Kelley's long established right to be free from unreasonable seizures was not violated by arresting her on the facts known to the

10

Braintree Police Officers.

Additionally, the Braintree Police Officers did not act reasonably under the circumstances presented to them.  As a matter of fact none of the Braintree Police Officers inquired upon or sought to secure any weapon in the possession of Mr. Kelley in direct contravention of established policies and guidelines.  Furthermore, it is undisputed that none of the Braintree Police Officers attempted to interview any of the minor children at the scene regarding what had occurred nor did any of the Braintree Police Officers seek to view any alleged injuries of Mr. Kelley.  This honorable court should find that the lack of inquiry upon the children and for a weapon or injuries of Mr. Kelley was entirely unreasonable under the circumstances and contributed to the lack of even arguable probable cause.  Although the Plaintiff is not suggesting the Braintree Police Officers needed to act in a more reasonable manner, the Plaintiff does argue by failing to corroborate Mr. Kelley's allegation with either visual evidence of injuries or by statements from witnesses the Braintree Police Officers lacked an iota or even scant probable cause.  In other words, in addition to their failures to seek information and the factual disputes as to what information they did in fact possess at the time they chose to arrest the Plaintiff, the Braintree Police Officers did not have even arguable probable cause to arrest Ms. Calabrese-Kelley.

> B. <u>Absent any adjudication of the disputed facts there can be no qualified immunity as the Braintree Police Officers did not possess even arguable probable cause to arrest the Plaintiff.</u>

The Defendants rely upon *Richardson v. City of Boston*, in support of their claim the officers were presented with undisputed facts sufficient to give them arguable probable cause and render their actions immune from suit.  However, the facts in *Richardson* are entirely distinguishable from the case at bar and therefore there can be no determination the officers had arguable probable cause, or that a reasonably prudent officer presented with the same

information would have determined no right to be free from unreasonable seizures had been violated. In *Richardson*, the victim of a domestic dispute appeared in front of a desk sergeant at a City of Boston police station and presented bruised and disheveled. *Richardson v. City of Boston*, 53 Mass. App. Ct. 201, 202 (Mass. App. Ct. 2001). The victim reported she had been struck in the face and the desk sergeant observed the bruising, furthermore the victim stated she was in fear of her life as she had been assaulted by Richardson two days before, which was corroborated by a police report filed by the victim. *Id.* The desk sergeant was further aware of previous incidents of domestic violence as he had assisted the victim in filing restraining orders in the past. *Id*. at 203. The Massachusetts Appeals Court held the aforementioned facts gave rise to probable cause to arrest for assault and battery under the Massachusetts Abuse Prevention statute. *Id*. at 206 – 207.

The within matter has an entirely different factual landscape and therefore, even absent the adjudication of the factual disputes, summary judgment is not appropriate as there is not even arguable probable cause. Here, Ms. Calabrese-Kelley reported she was forcibly pushed by Mr. Kelley first, she was disheveled and upset while Mr. Kelley was calm, Ms. Calabrese-Kelley had her injuries inspected by the Braintree Police Officers, none of the Braintree Police Officers knew Mr. Kelley or Ms. Calabrese-Kelley to assess their credibility from prior acts or statements, there were no outstanding 209A orders, and the Braintree Police Officers did not view any alleged injuries of Mr. Kelley. It is abundantly clear there are numerous and varied factual differences between the within matter and that of *Richardson*. In *Richardson* there had been numerous and known reports of violence, there were bruises and disheveled appearances, and there were very recent threats and reports of violence. Here, there is none of that, the only similarity is that someone claimed to have been hit and even that similarity should not give rise

12

to arguable probable cause because not only did Mr. Kelley claim to have been hit but Ms. Calabrese-Kelley claimed to have been struck and her injuries were visible. Ultimately, the facts presented to the Braintree Police Officers including the injury of Ms. Calabrese-Kelley and her disheveled appearance tend to suggest the Braintree Police Officers lacked even arguable probable cause. Without adjudicating the factual disputes of who the aggressor was and whether Ms. Calabrese-Kelley told the Braintree Police Officers she struck Mr. Kelley it is abundantly clear there is no immunity for their actions as the Braintree Police Officers either knew, or should have known, they were violating the rights of Ms. Calabrese-Kelley by arresting her.

3. SUMMARY JUDGMENT SHOULD NOT ENTER FOR THE MUNICIPALITY OF THE TOWN OF BRAINTREE BECAUSE THERE WAS A LACK OF ADEQUATE TRAINING REGARDING DOMESTIC VIOLENCE INCIDENTS INVOLVING LAW ENFORCEMENT PERSONNEL.

In *City of Canton, Ohio v. Harris*, the Supreme Court held to apply 42 U.S.C. 1983 liability to a municipality there must be a policy or custom of the city attributable to the deprivation of constitutional rights. *City of Canton,* 489 U.S. 378, 109 S. Ct. 1197, at 1203 (1989). Further that a failure to train can result in municipal liability only where that failure evidences deliberate indifference to the rights of the inhabitants. *Id.* (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)). Generally a failure to train raises the inference that failure to act in accord with proper training is causally connected. *Santiago v. Fenton*, 891 F.2d 373, 383 (1st Cir. 1989).

In the instant case the Braintree Police Officers testified to their training and not one of them proffered evidence of training regarding domestic violence situations. Furthermore, there was no indication there was any training for the Braintree Police Officers when it came to domestic violence situations involving law enforcement personnel. The failure to act in accord with the alleged policies shows there is an indifferent policy to protect law enforcement

13

personnel when the Braintree Police Officers were not trained regarding domestic violation incidents involving law enforcement personnel. As is factually undisputed, the Braintree Police Officers did not seek any weapon of the off-duty Mr. Kelley, this failure to abide by the policy of the department, established in 2003, shows a lack of training in this matter. There is thus enough evidence to prevent to a fact-finder, namely that there was no training regarding dealing with domestic violence involving law enforcement personnel, this lack of training evidences a policy because the municipality is indifferent to whether law enforcement personnel were appropriately trained and or protected by this indifference, and the weakness in training raises the inference that a lack of training for domestic violence incidents involving law enforcement personnel that caused a deprivation of Ms. Calabrese-Kelley's constitutional rights.

### IV. CONCLUSION

Ultimately summary judgment should not enter for the Defendants on any claims because there are multiple disputes of material fact in regards to: (1) whether the Braintree Police Officers had probable cause to arrest the Plaintiff; and (2) what knowledge the Braintree Police possessed in determining whether there was arguable probable cause to afford the Braintree Police Officers qualified immunity for a discretionary decision. In addition to the factual disputes regarding the probable cause there is clearly a lack of and adequate training regarding domestic violence situations involving law enforcement personnel. For those reasons and those more particularly articulated at hearing the Plaintiff respectfully requests this honorable court deny the Defendants' Motion for Summary Judgment and set this matter for trial.

Respectfully submitted

Plaintiff,
By Her attorney,




/s/ Jeb S. Penka
Jeb S. Penka, BBO #686069
Cohen Law Group
500 Commercial Street, Ste. 4R
Boston, MA 02109
(617) 523-4552
jeb@cohen-law-group.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Date: <u>October 15, 2018</u>　　　　　　　　<u>/s/ *Jeb S. Penka*　　　　　　</u>
　　　　　　　　　　　　　　　　　　　Jeb S. Penka, Esq.