UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Karen Calabrese-Kelley | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. 1:17-cv-10876-LTS |
| Town of Braintree, et al | )<br>)<br>) |
| Defendants. | )<br>) |

ORDER ON MOTION FOR SUMMARY JUDGMENT (DOC. NO. 24)

March 8, 2019

SOROKIN, J.

Defendants move for summary judgment on grounds of qualified immunity where the plaintiff alleges false arrest, false imprisonment, a violation of 42 U.S.C. § 1983, and a violation of the Massachusetts Declaration of Rights. Plaintiff opposes. For the reasons that follow, the defendants' motion for summary judgment is ALLOWED.

I. FACTS

It is undisputed that on the evening of February 21, 2014, the plaintiff, Karen Calabrese-Kelley, and her ex-husband, William Kelley, arranged to meet in a Kmart parking lot in Braintree to exchange custody of two of their four children. Doc. No. 31 ¶¶ 11-17. During the exchange of their children, Ms. Calabrese-Kelley and Mr. Kelley had an interaction that resulted in them both calling 911. Id. ¶¶ 35-36. Three officers from the Braintree police department responded to the call and eventually arrested Ms. Calabrese-Kelley. Id. ¶ 63.

Because the primary question is whether the officers who responded to the 911 calls are entitled to qualified immunity with respect to their arrest of Ms. Calabrese-Kelley, the facts are

described as they were known to the officers at the time of the arrest. However, the facts are presented in the light most favorable to Ms. Calabrese-Kelley, with all reasonable inferences drawn in her favor, pursuant to the standard for deciding a motion for summary judgment.[1] See LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (on summary judgment, a court is "obliged to view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor").

When Ms. Calabrese-Kelley called 911, she told the dispatcher that her ex-husband had assaulted her by pushing her, that he was a police officer, and that they were in the Braintree Kmart parking lot with their children. Doc. No. 26-1 at 69-70. Three officers from the Braintree Police Department responded to the 911 calls: Officer John McNamara, Officer David Clark, and Sergeant Charles Bata. Doc. No. 26-3 at 23. Prior to their arrival at the scene, the dispatcher told the officers that it was a domestic dispute involving an off-duty Boston police officer. Doc. No. 26-1 at 72, Doc. No. 26-8 at 26.

Sergeant Bata describes his observations of the scene as: "there were two parties there, the male and female parties, two separate cars, a few spaces apart." Doc. No. 26-3 at 27. When Sergeant Bata arrived, Officer McNamara was speaking with Ms. Calabrese-Kelley. Id. Both children were in Ms. Calabrese-Kelley's car at that time. Doc. No. 26-7 at 21.

The following information was obtained by the officers from Ms. Calabrese-Kelley, who "was very emotional" while talking to the officers. Doc. No. 26-7 at 21. After she and Mr. Kelley both arrived in the parking lot, she carried one of their daughter's hockey bag and stick to Mr. Kelley's car. Id. at 82. Mr. Kelley did not want to take the hockey equipment from her. At

---

[1] The facts as presented herein differ, to varying degrees, from the facts as the officers have asserted them. Where material, those disputed facts are noted.

some point while she was trying to give him the equipment, Mr. Kelley pushed her to the ground.² Doc. No. 31 ¶ 58. Because she was holding the hockey equipment, the hockey stick "swung out when [she] fell." Doc. No. 26-1 at 83. Ms. Calabrese-Kelley showed Sergeant Bata and Officer McNamara her "bloody knee" and the injuries on her hands which she got when Mr. Kelley pushed her to the ground. Doc. No. 26-1 at 85. Furthermore, she told the officers that Mr. Kelley knocked one of their daughters to the ground at some point during the incident. Id. at 79-80. None of the officers asked either of the two children, ages not revealed in the record, what happened between Mr. Kelley and Ms. Calabrese-Kelley. Doc. No. 31 ¶ 73.

The following information was obtained by Officer Clark and Sergeant Bata from Mr. Kelley, who was "calm" during his conversation with them.³ Doc. No. 26-8 at 21, 28. Mr. Kelley told the officers that "he was there for a child custody swap and that [Ms. Calabrese-Kelley] hit him with a hockey stick." Doc. No. 26-3 at 27. He said that Ms. Calabrese-Kelley "wanted him to take the bag that belonged to his daughter," and that "she came to the car and tried to put it in the car."⁴ Doc. No. 26-3 at 29, 31. He said "he got in front of her and blocked

---

² Sergeant Bata says he did not learn of Ms. Calabrese-Kelley's assertion that Mr. Kelley pushed her until after the arrest; however, she says she told the dispatcher and Officer McNamara at the scene. Drawing all reasonable inferences in her favor, a jury could conclude Sergeant Bata knew of this assertion prior to her arrest.

³ Ms. Calabrese-Kelley disputes the truthfulness of some of the things Mr. Kelley told the officers that night. However, she cannot and does not dispute that Mr. Kelley did in fact make these statements to the officers.

⁴ Sergeant Bata testified at his deposition that Mr. Kelley stated he was not going to take the hockey equipment from Ms. Calabrese-Kelley on that evening because he did not have custody that weekend of the daughter to whom the equipment belonged. Doc. No. 26-3 at 30-31. However, at Ms. Calabrese-Kelley's criminal trial in this matter, Mr. Kelley testified that he never told the Braintree police that he was not going to take the hockey equipment or that he did not have custody of that daughter. If Mr. Kelley is called to testify in this matter, the Court presumes that either Mr. Kelley will testify in accordance with his prior testimony given in the criminal matter, and if not, that testimony will be admissible as a prior inconsistent statement given under oath. See Fed. R. Evid. 801(d)(1)(A). The Court therefore treats Mr. Kelley's trial testimony as admissible evidence for summary judgment in this matter. Accordingly, what, if

3

her from putting it in." Doc. No. 26-9. Sergeant Bata observed a hockey stick and bag in the back seat of Mr. Kelley's car. Doc. No. 26-3 at 28. Mr. Kelley told the officers that Ms. Calabrese-Kelley "either fell on the ground, or . . . hit her head and knee on the [car] door." Doc. No. 26-8 at 22. He also told the officers that that one of their children had gotten into his car before the altercation. Doc. No. 26-9 at 1. However, when the officers arrived, both children were in Ms. Calabrese-Kelley's car. Doc. No. 26-7 at 21. Mr. Kelley stated that he had been hit on the back of his legs. Doc. No. 26-3 at 32. The officers did not look at his legs to see whether there were any marks on them. Id. Though the officers knew that Mr. Kelley was an off-duty police officer, none of them asked whether he had a firearm on him at any point. Doc. No. 26-3 at 26. At some point, Officer Clark took "control of the hockey stick and put it in his cruiser." Doc. No. 26-7 at 23.

Ultimately, Sergeant Bata made the decision to arrest Ms. Calabrese-Kelley because he determined that she was the "aggressor" in the situation. Doc. No. 26-3 at 34. She was arrested and transported to the Braintree Police Station. Doc. No. 31 ¶ 63. She was later tried for and acquitted of assault and battery with a dangerous weapon. Doc. No. 31 ¶ 70. She now brings an action against Sergeant Bata, Officer McNamara, Officer Clark, and the dispatcher on the 911 call (the "individual defendants"), as well as the Town of Braintree and the Braintree Police Department. Her complaint alleges four counts stemming from her arrest: (1) false arrest, (2) false imprisonment, (3) a violation of 42 U.S.C. § 1983, and (4) a violation of the Massachusetts Declaration of Rights ("MCRA claim").

---

anything, Mr. Kelley told the officers about his willingness to take the hockey equipment or his understanding of the custody arrangement is a disputed fact and thus unavailable for consideration on the officers' summary judgment motion.

4

## II. LEGAL STANDARD

The Court applies the familiar summary judgment standard. Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). Moreover, the Court is "obliged to view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great American Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). Even so, the Court must ignore "conclusory allegations, improbable inferences, and unsupported speculation." Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir.2009).

"Under the doctrine of qualified immunity, police officers are protected 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Mlodzinski v. Lewis, 648 F.3d 24, 32 (1st Cir. 2011) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). To defeat qualified immunity, "'the facts alleged or shown by the plaintiff' must 'make out a violation of a constitutional right' and the right must have been 'clearly established' at the time of the defendant's alleged violation." Id. (quoting Pearson, 555 U.S. at 231). To determine whether the right was clearly established, the Court must consider

> (a) whether the legal contours of the right in question were sufficiently clear that a reasonable officer would have understood that what he was doing violated the right, and (b) whether in the particular factual context of the case, a reasonable officer would have understood that his conduct violated the right.

Id. at 32-33. On summary judgment, the Court must "identify the "version of events that best comports with the summary judgment standard and then ask whether, given that set of facts, a reasonable officer should have known that his actions were unlawful." Id. at 29. Additionally, "the Supreme Judicial Court of Massachusetts has held that MCRA claims are subject to the same standard of immunity for police officers that is used for claims asserted under § 1983." Raiche v. Pietroski, 623 F.3d 30, 40 (1st Cir. 2010) (citing Duarte v. Healy, 405 Mass. 43, 46 (1989). Accordingly, the analysis of whether the individual defendants are entitled to qualified immunity applies equally to both Count III and Count IV.

III. DISCUSSION

    A. Claims Against the Individual Defendants

"The Fourth Amendment right to be free from unreasonable seizures of the person demands that an arrest be supported by probable cause." Santiago v. Fenton, 891 F.2d 373, 383 (1st Cir. 1989) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). The Massachusetts common law requirement "that an officer have 'reasonable grounds' for making an arrest . . . has been held to be 'substantially overlapping' with the constitutional requirement of 'probable cause.'" Id. (citing Wagenmann v. Adams, 829 F.2d 196 (1st Cir. 1987)). Therefore, Ms. Calabrese-Kelley may only prevail on each of her four claims if her arrest was not supported by probable cause.

    Additionally, the First Circuit has held that

> a police officer should not be found liable under § 1983 for a warrantless arrest because the presence of probable cause was merely questionable at the time of the arrest. His qualified immunity is pierced only if there clearly was no probable cause at the time the arrest was made.

Floyd v. Farrell, 765 F.2d 1, 5 (1st Cir. 1985). Whether "a reasonable policeman, on the basis of the information known to him, could have believed there was probable cause is a question of

law, subject to resolution by the judge not the jury." Prokey v. Watkins, 942 F.2d 67, 73 (1st Cir. 1991). "Nevertheless, if what the policeman knew prior to the arrest is genuinely in dispute, and if a reasonable officer's perception of probable cause would differ depending on the correct version, that factual dispute must be resolved by a fact finder." Id.

In this case, Sergeant Bata made the decision to arrest Ms. Calabrese-Kelley. The relevant facts are those facts known to the officers, as recited above by the Court.

The question before the Court is not whose version of events (Mr. Kelley's or Ms. Calabrese-Kelley's) is in fact true,[5] but whether a reasonable officer could have concluded that there was probable cause to arrest Ms. Calabrese-Kelley, based on the facts as described. A reasonable officer, based on the information known to Sergeant Bata, could have rejected Ms. Calabrese-Kelley's version of events and accepted Mr. Kelley's version, thereby concluding that Ms. Calabrese-Kelley was the aggressor. In that case, there would be probable cause she had committed assault and battery with a dangerous weapon (the hockey stick). That is, a reasonable officer could have concluded, as the officers in this case did, that Ms. Calabrese-Kelley struck first, as Mr. Kelley told them. Some other facts supported or were consistent with this conclusion, such as the fact that both parties agreed Ms. Calabrese-Kelley was the one who approached Mr. Kelley's car. Whether Ms. Calabrese-Kelley striking first was the "correct" conclusion[6] is not the legal issue on the pending motion, because even if "the presence of

---

[5] The relevant facts bearing on that question are broader and more substantial than the facts recited by the Court.

[6] The wisdom of making an arrest in this case is not before the Court, but the Court notes that Massachusetts law may have required the officers to make an arrest. The relevant law provides:
> Whenever any law officer has reason to believe that a family or household member has been abused or is in danger of being abused, such officer shall use all reasonable means to prevent further abuse. The officer shall take, but not be limited to the following action . . .

probable cause was merely questionable at the time of the arrest," the officers are entitled to qualified immunity.[7] Floyd, 765 F.2d 5. Viewing the facts in the light most favorable to Ms. Calabrese-Kelley and drawing all reasonable inferences in her favor, it cannot be said that there "clearly was no probable cause at the time the arrest was made." Id. In light of this conclusion, the officers are entitled to qualified immunity, and the false arrest, false imprisonment, and MCRA claims all fail. Thus, the motion for summary judgment is ALLOWED as to Counts I, II, III, and IV against the individual defendants.[8]

---

> (7) . . . When there are no vacate, restraining, or no-contact orders or judgments in effect, arrest shall be the preferred response whenever an officer witnesses or has probable cause to believe that a person:
> 
> (a) has committed a felony;
> (b) has committed a misdemeanor involving abuse as defined in section one of this chapter;
> (c) has committed an assault and battery in violation of section thirteen A of chapter two hundred and sixty-five."

Mass. Gen. Laws. ch. 209A, § 6

[7] Similarly, nothing in the Court's ruling today is a determination that the officers made the "correct" decision. Certainly, there are facts supporting Ms. Calabrese-Kelley's version of events, including the fact that the hockey bag Mr. Kelley blocked Ms. Calabrese-Kelley from putting in his car was in his car when the officers arrived and the fact that both children had retreated to Ms. Calabrese-Kelley's car, including one who was originally in Mr. Kelley's car. Nonetheless, neither the totality of these surrounding circumstances nor the reasonable inferences they support precluded a reasonable officer from concluding there was probable cause that Ms. Calabrese-Kelley struck first.

[8] Ms. Calabrese-Kelley asserts in her complaint that her "rights delineated in the Miranda warnings" were violated by the conduct of the individual defendants, and that this is an additional basis for her § 1983 and MCRA claims. The undisputed evidence before the court establishes that Ms. Calabrese-Kelley was presented with paperwork upon her arrival at the Braintree Police Station, including a Miranda rights notification form in English. Doc. No. 31 ¶¶ 66-67. Ms. Calabrese-Kelley admits that she refused to sign this Miranda rights notification form and alleges that she did so "because she had not been read her Miranda rights." Id. ¶ 68. Additionally, Ms. Calabrese-Kelley does not address the failure to read her Miranda rights orally as a defense to summary judgment at any point in her opposition. Doc. No. 28. Accordingly, there is no evidence before the Court upon which to conclude that the failure to orally read Ms. Calabrese-Kelley her Miranda rights is a constitutional violation upon which to base a § 1983 or MCRA claim.

B. Claims Against the Town and the Police Department

A "local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. Therefore, in order for the Town of Braintree or the Braintree Police Department to be liable, Ms. Calabrese-Kelley would have to establish "first, that [her] harm was caused by a constitutional violation, and second, that the City be responsible for that violation." Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 25-26 (1st Cir. 2005).

Additionally, MCRA is "coextensive with 42 U.S.C. § 1983, except that the Federal statute requires State action whereas its State counterpart does not." Batchelder v. Allied Stores Corp., 393 Mass. 819, 823 (1985). However, MCRA is limited to cases in which the "derogation of secured rights occurs by 'threats, intimidation or coercion.'" Bell v. Mazza, 394 Mass. 176, 182 (1985) (quoting Mass. Gen. Laws ch. 12, § 11H).

In this case, Ms. Calabrese-Kelley's arrest was supported by probable cause, and thus the § 1983 and MCRA claims fail against the Town and the Police Department. Even if her arrest were not supported by probable cause, however, Ms. Calabrese-Kelley has presented no evidence upon which this Court could conclude that there was some policy or custom of the Town of Braintree or the Braintree Police Department which caused the constitutional violation. Additionally, there is no evidence in the record that any such constitutional violation was achieved by threats, intimidation, or coercion. Accordingly, the Town of Braintree and the Braintree Police Department are also entitled to summary judgment on Counts III and IV.

IV.     CONCLUSION

The defendants' motion for summary judgment (Doc. No. 24) is ALLOWED on all counts.

SO ORDERED.

 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge
